**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 08:52 AM June 14, 2016**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MELINDA LOUISE ELKINS, | ) | CASE NO. 05-65317 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| CLARENCE ARNOLD ELKINS, II, | ) | CASE NO. 05-69543 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |

### MEMORANDUM OF OPINION (NOT FOR PUBLICATION)

The individual debtors moved to reopen their cases to permit the chapter 7 trustee to file amended tax returns based on a change in federal law which they claim will result in a refund of taxes paid on income that is now excludable from gross income.[1] The United States opposes the relief, contending Debtors will not be successful in their quest for a refund because the statute does not apply to them. The court held a hearing on April 25, 2016 and took the matter under advisement.

The court has subject matter jurisdiction of the underlying chapter 7 bankruptcy cases

---

1 Claims have been paid in full, meaning Debtors will receive any refund.

pursuant to 28 U.S.C. § 1334 and General Order 2012-7, the order of reference, entered on April 4, 2012. Venue in this district is appropriate under 11 U.S.C. § 1409. This memorandum of opinion constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## **FACTS**

In 1999, Clarence Elkins ("Elkins"), a non-debtor third party, was wrongfully convicted of rape and murder. At the time, he was married to Debtor Melinda Louise Elkins ("Melinda").[2] Debtor Clarence Arnold Elkins, II ("Clarence") is his son. Elkins spent seven years in prison. In 2006, he was exonerated. Elkins filed a lawsuit as a result of his wrongful conviction and incarceration which included claims for loss of consortium on Debtors' behalf. Elkins and his family received a settlement of $5,250,000. Clarence's share was approximately $627,000 and Melinda's was approximately $611,000.

Prior to the settlement, Melinda and Clarence filed chapter 7 bankruptcy petitions. When they filed, the Elkins lawsuit had not commenced and therefore was not included in the original schedules.[3] After it was filed, the chapter 7 trustee in their cases, Anne Piero Silagy ("Trustee"), intervened in the lawsuit. Debtors' share of the settlement was property of, and paid to, the bankruptcy estates. In both cases, the settlement proceeds were sufficient to pay all allowed claims in full and to return portions of the settlements to each individual debtor.

As part of the administration of the bankruptcy estates, Trustee filed tax returns for Debtors' bankruptcy estates.[4] Debtors challenged the amount of the settlements that were included as taxable income, resulting in a § 505 tax determination before this court. On March 26, 2013, this court entered an agreed order resolving that issue. Seventy-five percent (75%) of the settlement payment received by the estates were included as taxable income and the remaining twenty-five percent (25%) was excluded under 26 U.S.C. § 104(a)(2). The agreement was signed by counsel for Debtors, counsel for Trustee, and counsel for the United States Department of Justice. Trustee filed final reports in both cases and both cases were closed in 2014.

In late 2015, Congress passed 26 U.S.C. § 139F, which excludes certain wrongful incarceration awards from taxable gross income. Debtors therefore seek to reopen their cases to file amended estate tax returns to exclude income that was previously included, which will result in a refund. The United States opposes the relief, arguing the statute does not apply because the

---

2 Elkins and Melinda are no longer married.
3 The schedules were not amended to include the asset.
4 Debtors and United States agree that the chapter 7 trustee must file the amended returns because the original returns were filed under the tax identification numbers of the respective bankruptcy estates.

2

Debtors were not wrongfully incarcerated individuals, and therefore cannot avail themselves of the statute.

**DISCUSSION**

**A. Standard for reopening**

Debtors seek to reopen their cases for the purpose of amending tax returns filed by Trustee. 11 U.S.C. § 350(b) provides for reopening a case "to administer assets, to accord relief to the debtor, or for other cause." The decision to reopen is at the sound discretion of the court. Rosinski v. Boyd (In re Rosinski), 759 F.2d 539 (6th Cir. 1985) (citations omitted). To make the determination, the court is to "consider the equities of each case with an eye toward the principles which underlie the Bankruptcy Code." In re Kapsin, 265 B.R. 778 (Bankr. N.D. Ohio 2001) (citing Mendelsohn v. Ozer, 241 B.R. 503, 506 (E.D.N.Y. 1997)). The burden of proof rests with the movant. In re Caravona, 347 B.R. 259, 262 (Bankr. N.D. Ohio 2006).

Several courts in this circuit deem futility as a basis for denying a motion to reopen. Smyth v. Edamerica, Inc. (In re Smyth), 470 B.R. 459 (B.A.P. 6th Cir. 2012); In re Caravona, 347 B.R. 259 (Bankr. N.D. Ohio 2006); In re Jenkins, 330 B.R. 625 (Bankr. E.D. Tenn. 2003); *see also* In re Oglesby, 519 B.R. 699, 704 (Bankr. N.D. Ohio 2014) (reopening may be limited "where the court cannot afford the moving party the requested relief"). However, this view creates tension with another perspective of reopening:

> [R]eopening a case is generally a ministerial act that 'lacks independent legal significance and determines nothing with respect to the merits of the case.' Cusano v. Klein, 264 F.3d 936, 948 (9th Cir. 2001). The purpose of reopening is more properly understood as being to provide a procedural platform upon which to assert the merits of the issue the reopening party seeks to raise. In re Schultz, 509 B.R. 190, 197-98 (Bankr. N.D. Ind. 2014).

In re Quinn, 2015 WL 535533 (Bankr. N.D. Ohio 2015) (unpublished). The tension leaves the court to ponder the proper standard for determining futility, specifically how much latitude it has to consider the underlying substantive issue as grounds for denying or granting a motion to reopen. Put another way, if there appears to be a colorable legal issue at issue, should the case be reopened to consider that issue, or does the determination of the issue drive the reopening? Debtors offer little argument on this point but the United States clearly favors full review as a basis for reopening. The United States asserts a full review now will also promote judicial economy and allow the issue to be addressed now, rather than at the time the tax return is filed.

A line of cases from the Sixth Circuit addresses the notion of futility in the context of reopening to add creditors. In Rosinski, the Sixth Circuit considered whether a creditor could

prevent the debtor from reopening her case to add his debt. 759 F.2d 539. Two issues drove the analysis: (1) whether the failure to include the creditor was driven by bad faith, and (2) whether the creditor would be harmed if debtor was permitted to amend the schedules. On the latter point, the court weighed the debtor's right to discharge the debt with the creditor's right to file a claim. Since this was a no asset case, the creditor had not lost any rights. Although his claim would be subject to discharge, he would be entitled to file a claim with other creditors in the event an asset was discovered. Consequently, he had suffered no prejudice. There was no indication the omission was due to fraud or scheming by the debtor to preclude the amendment, and the Sixth Circuit therefore reversed and remanded the case to allow the amendment. Soult involved a similar issue. Soult v. Maddox (In re Maddox), 894 F.2d 815 (6th Cir. 1990). The distinguishing fact was that a claims bar date had been set. The Sixth Circuit permitted the reopening because the creditor would not have received anything in the bankruptcy case and therefore had "not lost any meaningful right that he would have enjoyed if he had been properly listed in the first place." Id. at 817. In both cases, there is a suggestion that reopening to amend the schedules was not futile.

The precedent that drives futility to the forefront is Zirnhelt v. Madaj (In re Madaj), 149 F.3d 467 (6th Cir. 1998), another reopen-to-add-creditor case. Madaj directly considered "when an otherwise dischargeable debt is omitted from the schedule in a Chapter 7 no-asset case and the debtor receives a discharge, what is the effect of re-opening the case to permit the debtor to schedule the omitted debt?" Id. at 472. The Sixth Circuit found there was no effect and affirmed the bankruptcy court's denial of the motion to reopen. Id. This authority clearly demonstrates that futility can be grounds to prevent reopening. In Madaj, the Sixth Circuit looked at the impact amending the schedules would have on the discharge and, finding none, concluded there was no basis to reopen the case. The court interprets this as a sanction to examine whether the substance for reopening is futile.

To determine whether reopening will have any effect in this case, this court must consider the impact of amending the tax return under 26 U.S.C. § 139F. If a benefit will inure to Debtors from reopening and filing an amended tax return, reopening is not futile. Unfortunately, the court is persuaded that reopening is futile because Debtors cannot avail themselves of the change in tax law.

### B. The statute covers awards made to the person who was wrongfully incarcerated

As the United States points out, the heading of § 139F references "amount received *by wrongfully incarcerated individuals.*" (italics added) Debtors were not wrongfully incarcerated individuals, nor do they so contend. Rather, they argue that since their awards, including loss of consortium, derive from the wrongful conviction of their now ex-husband and father, they are beneficiaries of this statute. The court cannot agree.

11 U.S.C. § 139F provides, in its entirety:

4

(a) **Exclusion from gross income.** In the case of any wrongfully incarcerated individual, gross income shall not include any civil damages, restitution, or other monetary award (including compensatory or statutory damages and restitution imposed in a criminal matter) relating to the incarceration of such individual for the covered offense for which such individual was convicted.

(b) **Wrongfully incarcerated individual.** For purposes of this section, the term "wrongfully incarcerated individual" means an individual—

(1) who was convicted of a covered offense,
(2) who served all or part of a sentence of imprisonment relating to that covered offense, and
(3) (A) who was pardoned, granted clemency, or granted amnesty for that covered offense because that individual was innocent of that covered offense, or
(B)(i) for whom the judgment of conviction for that covered offense was reversed or vacated, and
   (ii) for whom the indictment, information, or other accusatory instrument for that covered offense was dismissed or who was found not guilty at a new trial after the judgment of conviction for that covered offense was reversed or vacated.

(c) **Covered offense.** For purposes of this section, the term "covered offense" mean any criminal offense under Federal or State law, and includes any criminal offense arising from the same course of conduct as that criminal offense.

Although subsection (a) covers an array of monetary awards, it ties those awards to the wrongfully incarcerated individual in no less than three places. First, the statute applies "in the case of any wrongfully incarcerated individual." "Wrongfully incarcerated individual" is a specifically defined term that does not include Debtors. Second, the award must "relat[e] to the incarceration of such individual" and be connected to the "covered offense for which such individual was convicted." "Such individual" can be read in no other way but to refer to the person who was wrongfully incarcerated. Overlooking these references is the major flaw in Debtors' position. They want to focus on the nature of the award, which the court finds to be of secondary importance. The primary focal point is whether the award was made to a wrongfully incarcerated individual.

Debtors ignore these specific references to the individual, instead choosing to focus on the broad language that "any civil damages . . . relating to the incarceration" can be excluded from gross income. The language does subsume an array of awards but Debtors' focus is too narrow and ignores repeated references to the person who was incarcerated.

<tr>5</tr>

Debtors' comparison of the language used in this statute to 26 U.S.C. § 104(a)(2) is easily assailable for the same reason. Although there may be a slight overlap in language and structure between both statutes, this analogy ignores other highly relevant terminology and definitions found in § 139F that are not mirrored in § 104(a)(2).

The court also rejects Debtors' efforts to use language from the settlement agreed to bootstrap the new statute. They contend that since the release states that their claims arose from Clarence Elkins' incarceration, the awards are covered by § 139F. Since loss of consortium claims are derivative claims, they must be attached to some action and here it was a wrongful incarceration action. If this were the primary question, Debtors might have a colorable argument. However, Debtors were not the wrongfully incarcerated individuals, defeating application of § 139F.

## CONCLUSION

The court denies Debtors' motions to reopen because doing so would be futile. 11 U.S.C. § 139F excludes from gross income an array of awards made to a wrongfully incarcerated individual. Debtors were not wrongfully incarcerated individuals and therefore cannot avail themselves of the benefit of the statute. Orders denying the motions to reopen will be entered immediately.

# # #

**Service List:**

David B. Spalding, L.L.C.
157 Wilbur Drive, N.E.
North Canton, OH 44720

Alan Shapiro
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, DC 20044

Anne Piero Silagy, Esq
1225 South Main St
Suite 1
North Canton, OH 44720